UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:13-cv-21897 -- Lenard/Goodman

ROSA ROJAS, et al.,

    Plaintiffs,

    vs.

CARNIVAL CORPORATION d/b/a CARNIVAL

CRUISE LINES

    Defendant.

_____

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Carnival Cruise Line's ("Carnival") Motion for Summary Judgment ("Motion) (D.E. 89), filed on September 29, 2015. Carnival's Motion is now fully briefed and after reviewing the Motion, Response, Reply, and the summary judgment record, the Court finds as follows.

    **I.**    **Procedural History**

This is a maritime action for injuries suffered by Rosa Rojas and Julian Collazos (collectively, "Plaintiffs") – who were passengers aboard the Carnival Sensation – after they lost control of a scooter they were renting from an outside contractor and struck a light pole in Nassau, Bahamas. (D.E. 56, Second Amended Complaint ¶ 7–19.) Plaintiffs filed their Original Complaint on May 29, 2013. (D.E. 1.) The Court entered an Order directing the Plaintiffs to file an Amended Complaint to avoid asserting multiple causes of action in a single count. (D.E. 54 at 4.) In accordance with the

1

Court's Order, Plaintiffs filed their Amended Complaint on September 25, 2014. (D.E. 56.) Defendant moved to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs failed to allege sufficient facts to establish that Carnival breached a duty to warn about the dangers associated with scooter rentals and that Carnival had breached a duty to timely secure an air-ambulance for Plaintiff Collazos. (D.E. 59.) After the Motion was fully briefed, the Court granted the Motion and dismissed Plaintiffs' claims without prejudice. (D.E. 75.) The Court held that Plaintiffs' duty to warn claim failed as a matter of law because:

> Plaintiffs have not alleged any facts from which it may be inferred that Defendant either knew or should have known of any dangerous or unsafe condition associated with scooter vendors or the scooters that such vendors rented in the port of call.

Id. at 6. The Court also held that Plaintiff Collazos' duty to render aid claim was insufficiently pleaded because:

> Collazos alleges no facts describing how the alleged delay caused any injury or caused any existing injuries to worsen. Furthermore, Collazos fails to allege what specific injury he suffered as a result of the eight-hour delay.

Id. at 8. The Court granted the Plaintiffs an opportunity to amend their complaint for a second time, which they did on March 13, 2015. (D.E. 79.)

The Plaintiffs' Second Amended Complaint added four new paragraphs of factual allegations that were not previously contained in their Amended Complaint. These new paragraphs read as follows:

> 25. Even a cursory online search for past incidents, Carnival's knowledge of same and even a U.S. Department of State

> warning regarding the danger of renting scooters in Bahamian ports of call reveal that the Defendant had actual and/or constructive knowledge of the dangers of renting scooters; which Defendant is aware that passengers frequently do.
>
> . . .
>
> 26. Provided Carnival Corporation's knowledge and experience with scooter rental establishments, Carnival Corporation should have directly warned Plaintiffs of the dangers of scooter rentals on the island, advised which rental companies were not reputable and otherwise fully advised Plaintiffs as to the potential for incidents as a result of renting scooters for non-reputable companies. Despite the knowledge of Carnival Corporation, Plaintiffs were not warned of the known dangers.
>
> . . .
>
> 36. Specifically, as a result of the Defendant's delay Mr. Callazos developed a pulmonary embolism necessitating treatment with blood thinners for a period of six months.
>
> . . .
>
> 37. Additionally, during Mr. Collazos' initial rehabilitation period, he developed a blood clot in his left leg and was diagnosed with heterotopic ossification.

(D.E. 79.) Plaintiffs also attached, as an exhibit to their Second Amended Complaint, a short article published on September 26, 2011, raising safety concerns about renting scooters and water sports equipment in the Bahamas. (D.E. 79-1.)

In response to Plaintiffs' Second Amended Complaint, Carnival filed its pending Motion to Dismiss on March 30, 2015. (D.E. 83.) On April 16, 2015, Plaintiffs filed their Response in Opposition to the Motion to Dismiss (D.E. 85) to which Carnival replied on April 27, 2015, (D.E. 86).

3

Before the Court could rule on the Motion to Dismiss, Carnival filed its Motion for Summary Judgment (D.E. 89.)  Plaintiffs filed their Response in Opposition to Carnival's Motion for Summary Judgment (D.E. 94) on October 15, 2015, and Carnival replied on October 16, 2015 (D.E. 96).

The Court will now consider Carnival's Motion for Summary Judgment.

## II. Motion for Summary Judgment

### A. Rule 56 Standard

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since <u>a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.</u>

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (internal quotation omitted).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249–50.  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

4

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once the movant makes this initial demonstration, the burden of production shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324; see also Fed. R. Civ. P. 56(c). To satisfy this burden the nonmoving party must "do more than simply show that there is a metaphysical doubt as to the material facts," but instead must demonstrate that there is a "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986). An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

When reviewing the summary judgment record, the Court construes the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Keeping these standards in mind, the Court will now consider Carnival's Motion for Summary Judgment (D.E. 89), Plaintiffs' Response (D.E. 94), Carnival's Reply (D.E. 96), and the summary judgment record.[1]

---

[1] The summary judgment record consists of: Plaintiff Collazos' deposition (D.E. 60-1); Plaintiff Rojas' deposition (D.E. 60-2); a copy of the Carnival Sensation's "Fun Times Newsletter" for

5

## B. Facts in the Summary Judgment Record

### 1. Undisputed Facts

It is undisputed that on May 31, 2012, Plaintiffs departed Port Canaveral, Florida aboard the Carnival Sensation. See D.E. 89, Def.'s Mot. Summ. J. ¶ 1; D.E. 94, Pls.' Resp. ¶ 1 (admitting this undisputed fact). This vessel was owned by Defendant Carnival and was scheduled to visit Nassau, Bahamas on June 1, 2012. Id. The evening before the ship was set to dock in Nassau, Plaintiffs visited the shore excursion desk and inquired about a catamaran tour. Id. ¶ 2; id. ¶ 2. Plaintiffs did not discuss moped rentals with Carnival employees at this time. Id. When the Plaintiffs disembarked in Nassau on June 1, 2012, they rented a scooter from Fathia Scooter Rentals. Id. ¶ 11; id. ¶ 11. Fathia Scooter Rentals was an independent provider of shore excursions which, at the time of the accident, was not owned in whole or in part by Carnival. Id. ¶ 12; id. ¶ 12. In fact, Carnival has no formal relationship with scooter vendors in the port of Nassau, Bahamas. Id.

It is also undisputed that after renting the scooter from Fathia Rentals, Plaintiffs drove for approximately five to ten minutes before hitting a pothole, losing control of the vehicle, and striking a light-pole. Id. ¶¶ 16–17; id. ¶¶ 16–17. After the accident, Plaintiff

---

June 1, 2012 (D.E. 60-3); the deposition of Ralph Valente, cruise director of the Carnival Sensation (D.E. 60-4); a composite exhibit of photographs showing warning sign (D.E. 60-5); the deposition of Mario Romero, Carnival's corporate representative (D.E. 60-6); the passenger contract (D.E. 60-7); another set of composite photographs showing the disembarkation area aboard the Carnival Sensation and a warning sign attached to a temporary screen (D.E. 63-1); the affidavit of Luisa Alvarado, a passenger aboard another Carnival ship at around the time of Plaintiffs' accident (D.E. 63-2); and any undisputed facts that were agreed upon by the parties in Defendant's Motion for Summary Judgment (D.E. 89), Plaintiff's Response in Opposition (D.E. 94), and Defendant's Reply in Support (D.E. 96).

Collazos was transported to a private medical center, but was ultimately taken to a public Bahamian hospital. Id. ¶ 20; id. ¶ 20. Carnival was informed that Plaintiffs had been in an accident at approximately 2:00 p.m. on June 1, 2012. Id. ¶ 39; id. ¶ 39. Plaintiff Rojas telephoned a Carnival employee and informed the cruise line that an air-ambulance was necessary to save Plaintiff Collazos' life after being told that it would take three to four days for Collazos to be seen by a doctor,. Id. ¶ 20; id. ¶ 20. The Carnival agent agreed to make the arrangements for an air ambulance, but informed Plaintiffs they would be obligated to pay for the service. Id. An air-ambulance was provided at approximately 3:00 a.m. on June 2, 2015, and Plaintiff Collazos was ultimately transported back to the United States aboard an air-ambulance secured and paid for by Carnival. See D.E. 94, Pls.' Resp. ¶ 41; D.E. 96, Def.'s Reply ¶ 41. Plaintiffs were treated for their injuries after returning to the United States. Id.

### 2. Disputed Facts

Carnival claims that warnings about the danger of renting scooters in Nassau were disseminated in a variety of forms during Plaintiffs' cruise. Carnival claims that: (1) there were two warnings contained in the "Fun Times Newsletter" that was distributed to passengers' staterooms, see D.E. 89, Def.'s Mot. Summ. J. ¶¶ 3–4; (2) warnings regarding scooter rentals were read aloud over the public address system the morning the ship docked in Nassau, id. ¶ 6; (3) scooter warnings were made during the morning show broadcast on the ship's closed circuit television, id. ¶ 7; (4) there were large warnings signs permanently affixed to the wall on both the starboard and port gangways where passengers disembark, id. ¶ 8; and (5) all Carnival employees were trained to warn

7

passengers about renting scooters ashore, id. ¶ 9. Plaintiffs claim they never saw or heard any warnings regarding the rental of scooters in Nassau, Bahamas; and offer the affidavit of another Carnival passenger who was aboard a different ship in May 2012, and also remembers receiving no warnings about the dangerousness of scooter rentals in the Bahamas. See D.E. 94, Pls.' Resp. ¶¶ 26-37, 38.

Additionally, Carnival contends that it was the pothole, and not the scooter's brakes, which caused Plaintiff Collazos to lose control of the moped and strike the light-pole. See D.E. 89, Def.'s Mot. Summ. J. ¶ 18. Plaintiffs dispute the underlying factual cause of the accident and claim that "if the brakes had been working properly [Plaintiff Collazos] could have gained control of the scooter and stopped it." See D.E. 94, Pls.' Resp. ¶ 18.

Finally, Carnival asserts Plaintiffs failed to inspect and test the brakes of their moped before renting the vehicle and commencing driving. See D.E. 89, Def.'s Mot. Summ. J. ¶ 15. Plaintiffs disagree, asserting that "a corporate representative of the scooter rental company went over the safety features of the scooter and showed [Plaintiff Collazos] the gas and brakes. . . . Mr. Collazos conducted a visual inspection of the scooter and it appeared to look operable and in good repair." See D.E. 94, Pls.' Resp. ¶ 15.

Based on this record, the Court must determine whether there is a genuine issue of material fact which would preclude entering summary judgment on behalf of Carnival.

### C. Discussion

When an alleged tort occurs aboard a ship sailing upon navigable waters, federal maritime law controls the resulting claims. See Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1564 n.10 (11th Cir.1991); Keefe v. Bahama Cruiseline, Inc., 867 F.2d 1318, 1321 (11th Cir. 1989). "In analyzing a maritime tort case, [federal courts] rely on general principles of negligence law." Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir. 1980)). To satisfy the burden of proof in a negligence action, the plaintiff must show: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach was the proximate cause of plaintiff's injury; and (4) the plaintiff suffered damages as a result. See Isbell v. Carnival Corp., 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006) (citing Hasenfus v. Secord, 962 F.2d 1556, 1559–60 (11th Cir. 1992)). Plaintiffs claim Carnival is liable for injuries because it failed to: (1) warn them of the danger of renting poorly maintained scooters in Nassau, Bahamas; and (2) secure an air-ambulance for Plaintiff Collazos in a timely manner. (D.E. 56, 2nd Am. Compl. ¶¶ 24, 34.)

**1. Duty to Warn Claim**

Plaintiffs contend that their accident was caused by their scooter's poorly maintained brakes and that Carnival had a duty to warn them that scooter vendors in Nassau, Bahamas were known for renting sub-standard equipment. Because general maritime law applies in this case, Carnival – like any other cruise ship owner – owed a duty to its passengers to exercise "reasonable care under the circumstances." See

Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632 (1959).  In the Eleventh Circuit:

> [t]he benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition. . . .

Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir.1989).  Carnival's duty to warn its passengers of a "risk-creating condition" extended only to "known dangers which are not apparent and obvious." Cohen v. Carnival Corp., 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013).

The parties vigorously dispute whether Carnival owed Plaintiffs a duty to warn about the dangerousness of scooter rentals – particularly whether Carnival knew or should have known of the danger and, if so, whether the condition of the brakes was an open and obvious condition.  However, for the purposes of this Order, the Court will assume, without deciding, that Carnival had a duty to warn Plaintiffs that rental scooters in the Bahamas are often poorly maintained, and therefore, present special dangers to tourists.  The Court will also assume that Carnival breached this duty by failing to adequately warn the Plaintiffs.  With this assumption in place, the Court will decide whether there is any evidence on the summary judgment record that the scooter's improperly maintained brakes were the proximate cause of the accident.

After reviewing the summary judgment evidence presented by the parties, the Court concludes there is no evidence on the record that the brakes on the scooter rented by the Plaintiffs were poorly maintained; or, in the alternative, that any deficiency in the

10

brakes stemming from sub-par maintenance caused the accident.[2] Plaintiffs argue that because the brakes failed, they must have been poorly maintained by the vendor. However, this is mere speculation, rather than a proper inference derived from fact. See, e.g., Hughes v. Stryker Corp., 423 F. App'x 878, 882 (11th Cir. 2011) (affirming district courts award of summary judgment on plaintiff's negligence claim, because "a jury could only speculate as to why the prosthesis failed."); Avril v. Village South Inc., 934 F. Supp. 412, 417 (S.D. Fla.1996) (conjecture or speculation does not satisfy non-moving party's burden in responding to summary judgment). For Plaintiffs to recover under their theory of negligence, they needed to produce some factual evidence that the brakes were improperly maintained by the vendor.[3] Otherwise, the jury would be left to guess whether, among other reasons: (1) the brakes failed because the scooter struck the pothole with great force; (2) the brakes were defectively installed by the manufacturer; (3) a

---

[2] While the Court is aware it is not permitted to weigh evidence at this stage, it is noteworthy that Plaintiffs' own evidence damages their argument that the scooter was poorly maintained: "[Plaintiffs] conducted a visual inspection of the scooter and it appeared to look operable and in good repair." See Pls.' Resp. ¶ 15.

[3] Under their theory of liability, Plaintiffs are imputing to Carnival actual or constructive knowledge that Bahamian scooter vendors improperly maintain their vehicles and that these vehicles pose special dangers because of their poor condition. Because the purported duty requires Carnival to warn its passengers about the dangers associated with renting scooters from local vendors (precisely because these vendors rent poorly maintained equipment), the cause of Plaintiffs' injury must result from the breach of this duty. There is no general duty to warn about the inherent dangers associated with operating motor vehicles, because the risks are open and obvious. See, e.g., Morrell & Co. v. Royal Caribbean Cruises, Ltd., 534 F. Supp. 2d 1345, 1350 (S.D. Fla. 2008) ("The inherent dangers of operating a motor vehicle, such as a dune buggy . . . are commonly known and most people in the United States become familiar with them in their everyday lives. Indeed, the fact that an individual riding in a dune buggy may become involved in an accident with another vehicle (or even a stationary object) is precisely the type of obvious danger which courts have recognized does not create a duty to warn."). Therefore, the cause of Plaintiffs' accident cannot derive from the inherent dangers of operating a motor vehicle.

design defect caused the brake failure; or (4) the brakes failed because they were improperly maintained by the vendor. On this record, Plaintiffs cannot recover, as a matter of law, because they have produced no facts that the <u>improper maintenance</u> of the brakes proximately caused their injuries.

Because Plaintiffs have produced no evidence that would permit a jury to infer, without speculating, that improper maintenance caused their brakes to fail, thereby causing their accident, there is a "complete failure of proof concerning an essential element of [their negligence] claim." <u>Celotex</u>, 477 U.S. at 322–23. Accordingly, summary judgment must be granted as to Plaintiffs' failure to warn claim.

**2. Duty to Render Aid**

Plaintiff Collazos asserts that Carnival had a duty to timely secure medical transportation for him, and that it breached this duty. Generally, a "ship owner is only liable to its passengers for <u>medical negligence</u> if its conduct breaches the carrier's more general duty to exercise reasonable care under the circumstances." <u>Franza v. Royal Caribbean Cruises, Ltd.</u>, 772 F.3d 1225, 1246 (11th Cir.2014) (citation and internal quotation marks omitted) (emphasis added). While it is clear that cruise lines must exercise reasonable care when medically treating passengers who are aboard their ships, it is less clear whether cruise lines have a duty to secure medical transport for passengers who sustain injuries ashore. A recent decision in this District concluded that cruise lines have no duty to secure medical transport for passengers who are injured ashore. <u>See Gliniecki v. Carnival Corporation</u>, 632 F. Supp. 2d 1205, 1206 (S.D. Fla. 2009). However, the undersigned need not resolve this legal question, because it is undisputed

12

that Carnival assumed the duty to secure medical transport for Plaintiff Collazos.[4] See Stauffer Chem. Co. v. Brunson, 380 F.2d 174, 182 (5th Cir. 1967) ("When one voluntarily assumes a duty he is bound to perform it with care and if done negligently, he is liable for damage resulting from such negligence.").

Because Carnival assumed the duty to secure medical transport – the first element of Plaintiffs' negligence claim is clearly established. The Court will also assume, without deciding, that there is sufficient evidence on this record that would permit a jury to infer that – given the length of time it took to secure the air-ambulance – Carnival breached its duty. The question remains, however, whether Plaintiff has raised material evidence to support the causation and damages elements. To answer the query, the Court must decide whether (1) there are any facts on the record that would support a jury finding that Carnival's delay caused the Defendant additional injuries or exacerbated his preexisting injuries; or (2) there are facts from which a jury could determine (or infer) that specific damages arose from Carnival's delay.

In its Order dismissing the untimely assistance claim in Plaintiffs' Amended Complaint, this Court held that:

> Collazos alleges no facts describing how the alleged delay caused any injury or caused any existing injuries to worsen. Furthermore, Collazos fails to allege what specific injury he suffered as a result of the eight-hour delay.

---

[4] Carnival concedes that it agreed to secure medical transport for Plaintiff Collazos. See D.E. 89, Def.'s Mot. Summ. J. ¶ 20 ("Plaintiff Rojas testified [] she advised a Carnival representative that an air ambulance was needed to save Collazos' life. . . The Carnival representative spoke to her supervisor and advised that Carnival would make the arrangements to secure an air ambulance, but Collazos would be obligated to re-pay Carnival.").

(D.E. 75 at 6.) In response to the Court's Order, Plaintiff amended his claim for failure to timely render aid and alleged the following facts:

> 36. Specifically, as a result of the Defendant's delay Mr. Callazo developed a pulmonary embolism necessitating treatment with blood thinners for a period of six months.
>
> . . .
>
> 37. Additionally, during Mr. Collazos' initial rehabilitation period, he developed a blood clot in his left leg and was diagnosed with heterotopic ossification.

(D.E. 79 at 7.) Upon review of Plaintiff's amended claims, the Court determined there were sufficient factual pleadings to survive a motion to dismiss; and consequently, proceeded to Defendant's Motion for Summary Judgment. However, after reviewing the summary judgment record, there are no disputed or undisputed facts supporting the allegations in paragraphs 36 and 37 of Plaintiffs' Second Amended Complaint.

It is a longstanding principle that to survive summary judgment the non-moving party must produce, "sufficient evidence supporting the claimed factual dispute [] to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). It is equally well-established that the non-moving party may not "rest on his allegations." Id. Moving beyond the face of the allegations in Plaintiffs' Second Amended Complaint, the only evidence that addresses Plaintiff Collazos' medical condition is his deposition. See D.E. 60-1 at 95–110. Plaintiff testified that the morning after his surgery in a Tampa hospital, he was

breathing irregularly and medical professionals discovered a "blood clot in [his] lung." Id. at 99:7. Plaintiff Collazos also testified that five days after his surgery, medical providers discovered a hematoma on his leg, id. at 100:10–12, and that two weeks after surgery a heterotopic ossification was discovered in his left leg.  Id. at 103:1–22.  However, none of his testimony – and no other evidence provided by either party – established what caused the blood clot in Plaintiff Collazos' lung, the hematoma on his leg, or the heterotopic ossification in his left leg.  Because there is no evidence in the summary judgment record linking the delay caused by Carnival to any injury or exacerbation of injury suffered by Plaintiff, his claim cannot proceed to a jury.[5] Therefore, the Court must grant summary judgment on behalf of Carnival as to Plaintiff Collazos' failure to timely aid claim.

## V. Conclusion

For these reasons, it is hereby **ORDERED AND ADJUDGED** that:

(1)   Defendant Carnival's Motion for Summary Judgment (D.E. 89), filed on September 29, 2015, is **GRANTED**; AND

(2)   Final Judgment for Defendant shall be issued by separate order pursuant to Rule 58(a) of the Federal Rules of Civil Procedure;

(3)   All pending motions are **DENIED AS MOOT**; and

---

[5] The Court notes that the Plaintiffs designated a host of treating physicians and medical experts as potential witnesses in this case.  (D.E. 55-1, 55-2, 72, 88.)  However, not a single affidavit or deposition of a medical provider or expert was presented to the Court as part of the summary judgment record.  While medical evidence would not necessarily be required to establish that Carnival's delay caused a distinct injury or exacerbated an existing one, it certainly would have been the easiest way to establish the third and fourth elements of Plaintiff Collazos' negligence claim.

(4)     This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 30th day of November, 2015.

_____
JOAN A. LENARD
UNITED STATES DISTRICT JUDGE